IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ANTWAN JERNELL THOMAS,          *
# 16338-003,                    *
                                *
    Petitioner,                 *  CRIMINAL NO. 15-00253-CG
                                *  CIVIL ACTION NO. 17-00118-CG
vs.                             *
                                *
UNITED STATES OF AMERICA,       *
                                *
        Respondent.             *


## REPORT AND RECOMMENDATION

Pending before the Court is Petitioner Antwan Jernell Thomas'
Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28
U.S.C. § 2255 (Doc. 32), the Government's responses in opposition
(Docs. 40, 50, 56), and Petitioner's replies to the Government's
responses.  (Docs. 45, 48).  On August 22, 2019, the Court
conducted an evidentiary hearing on the limited issue of counsel's
failure to file a notice of appeal.[1]  (Docs. 51, 61).

---

[1] A district court is not required to hold an evidentiary hearing
with respect to every claim of ineffective assistance of counsel
asserted in a § 2255 petition.  Holmes v. United States, 876 F.2d
1545, 1553 (11th Cir. 1989) ("A hearing is not required on patently
frivolous claims or those which are based upon unsupported
generalizations.  Nor is a hearing required when the petitioner's
allegations are affirmatively contradicted by the record.")
(citation omitted).  In his motion and subsequent briefing,
Petitioner raises three claims, namely: (1) that counsel was
ineffective for failing to file a notice of appeal; (2) that
counsel was ineffective for failing to challenge the drug amount
with which he was charged; and (3) that counsel was ineffective

This action was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8(b) of the Rules Governing Section 2255 Cases and is now ready for consideration.[2]  Upon consideration, the undersigned hereby recommends that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 be **DENIED**, that this action be **DISMISSED**, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Antwan Jernell Thomas.[3]  The undersigned also recommends that, should Thomas file a certificate of appealability, it should be denied, as he is not entitled to appeal *in forma pauperis*.

I. **PROCEDURAL BACKGROUND**

Thomas was indicted for possession with the intent to distribute 30.5 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Count One); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)

---

for failing to challenge his designation as a career offender. (Doc. 32; Doc. 45 at 3).  After carefully reviewing the record, the Court determines that no evidentiary hearing is necessary for disposition of the second and third issues.

[2] The Honorable Senior United States District Judge Callie V.S. Granade presided over the proceedings in this action.  The undersigned has reviewed Thomas' motion and all other relevant documents in the Court's file and has fully familiarized herself with the proceedings before Judge Granade.

[3] The undersigned **DENIES** as **MOOT** Thomas' Motion to Dismiss for Failure to Prosecute.  (Doc. 34).

(Count Two); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count Three). (Doc. 1). Thomas entered a plea of guilty as to Count Two of the indictment (possession of a firearm in furtherance of a drug trafficking crime), pursuant to a written plea agreement. (Docs. 18, 19). During the guilty plea hearing, Thomas was placed under oath and Judge Granade questioned him regarding his satisfaction with counsel, the voluntariness of his plea, and whether he understood the charges levied against him:

> THE COURT: Okay. Have both of you received a copy of the indictment, the written charges in this case?[4]
>
> DEFENDANT THOMAS: Yes, ma'am.
>
> . . .
>
> THE COURT: And have you fully discussed those charges and the case in general with your lawyer?
>
> DEFENDANT THOMAS: Yes, ma'am.
>
> . . .
>
> THE COURT: Do you understand the charges pending against you?
>
> DEFENDANT THOMAS: Yes, ma'am.
>
> . . .
>
> THE COURT: Are you fully satisfied with the counsel, representation, and advice given to you in your case by your lawyer?
>
> DEFENDANT THOMAS: Yes, ma'am.

---

[4] The Court conducted two guilty plea hearings simultaneously. Only the excerpts pertaining to Petitioner Thomas are included herein.

. . .

THE COURT: All right. Now, for each of you I've been provided with a plea agreement and an attached factual resume. I want you to take a look at those documents and tell me on the record whether that is your plea agreement and factual resume and whether you signed those documents.

DEFENDANT THOMAS: Yes, ma'am, yes, ma'am.

. . .

THE COURT: All right. Did each of you have the opportunity to read and discuss the plea agreement and the factual resume with your lawyer before you signed it?

DEFENDANT THOMAS: Yes, ma'am.

. . .

THE COURT: Okay. Do you understand the terms of your plea agreement?

DEFENDANT THOMAS: Yes, ma'am.

. . .

THE COURT: Has anybody made any promise or assurance to you of any kind that is not in the plea agreement in order to get you to accept the plea agreement?

DEFENDANT THOMAS: No, ma'am.

. . .

THE COURT: All right. Mr. Thomas, in your case the maximum penalty the Court could impose upon conviction of this offense is a minimum mandatory five years in prison up to 40 years in prison, a fine not to exceed $250,000, a term of supervised release of up to three years which would follow any term of imprisonment, and if you violated the conditions of supervised release you could be in prison for that entire term as well, and a

mandatory special assessment of $100. Do you understand those possible consequences of your guilty plea?

DEFENDANT THOMAS: Yes, ma'am.

. . .

THE COURT: Now, the United States Sentencing Commission has issued sentencing guidelines for judges to consider when determining the sentence in a criminal case. Have you and your attorney talked about how the sentencing guidelines might affect your sentence?

DEFENDANT THOMAS: Yes, ma'am.

. . .

THE COURT: Do you understand that the Court will not be able to determine the advisory guideline range for your case until the probation office has prepared a presentence report and you and the government have had the opportunity to challenge the reported facts and the application of the guidelines recommended by the probation office and that the sentence ultimately imposed may be different from any estimate your attorney or anybody else might have given you in this case?

DEFENDANT THOMAS: Yes, ma'am.

. . .

THE COURT: Do you understand that after your initial advisory guideline range has been determined, the Court has the authority to depart either upwards or downwards from that range and will also examine certain statutory sentencing factors which may result in the imposition of a sentence that's either greater than or lesser than that called for by the sentencing guidelines?

DEFENDANT THOMAS: Yes, ma'am.

. . .

THE COURT: Do you understand that under some circumstances you or the government may have the right to appeal any sentence that is imposed? However, each of your plea agreements contains a limited waiver of your

right to appeal and in each of your cases you have
retained the right to appeal only if sentence is imposed
in excess of the statutory maximum, if sentence is
imposed that constitutes an upward departure or variance
from the sentencing guideline range, or if you have a
claim of ineffective assistance of counsel. Do each of
you understand that you have waived your right to appeal
in all but those three circumstances outlined in your
plea agreement?

DEFENDANT THOMAS: Yes, ma'am.

. . .

THE COURT: Do you also understand that you have a right
to plead not guilty to any offense charged against you
and to persist in that plea and that you would then have
the right to a trial by jury, at that trial you would be
presumed to be innocent and the government would have to
prove your guilt beyond a reasonable doubt, you would
have the right to the assistance of counsel for your
defense, the right to see and hear all of the witnesses
and have them cross-examined in your defense, the right
on your own part to decline to testify unless you
voluntarily elected to do so in your own defense, and
the right to the issuance of subpoenas to compel the
attendance of witnesses to testify in your defense? Do
you understand you have those rights?

DEFENDANT THOMAS: Yes, ma'am.

. . .

THE COURT: All right. . . . Mr. Thomas, in your case
you're pleading guilty to a charge of violating Title
18, United States Code, Section 924(c), as charged in
count two. In order to convict you of that offense, the
government would have to prove that you committed a drug-
trafficking offense in violation of federal law and that
you knowingly used, carried, or possessed a firearm and
that that use, carrying, or possession was during and in
relation to the drug-trafficking offense. Do you
understand what the government would have to prove in
order to convict you?

DEFENDANT THOMAS: Yes, ma'am.

. . .

THE COURT: All right. I asked each of you a few minutes ago if you had signed the plea agreement and the factual resume attached to it and you said you had. And I want to make sure that you understand that by signing the factual resume you are agreeing that the government could prove the facts set forth in that document in support of your guilty plea. Do you understand and agree to that?

DEFENDANT THOMAS: Yes, ma'am.

. . .

THE COURT: All right. I have read those. So I will now ask each of you how do you plead to the charge, guilty or not guilty?

DEFENDANT THOMAS: Guilty.

. . .

THE COURT: All right. It is the finding of the Court in the case of United States versus Antwan Jernell Thomas . . . that each defendant is fully competent and capable of entering an informed plea, that each defendant is aware of the nature of the charges and the consequences of the plea, and that the pleas of guilty are knowing and voluntary pleas supported by an independent basis in fact containing each of the essential elements of the offense. The pleas are therefore accepted and each defendant is now adjudged guilty of that offense. . . .

(Doc. 38 at 4-14).

The presentence investigation report ("PSR"), generated by the probation office, reflects that, at the time of Thomas's arrest, he was found in possession of 33 grams of marijuana, 66 grams of methamphetamine, 25 grams of heroin, and 25 grams of ecstasy. (Doc. 22 at 4). The PSR also designated Thomas as a career offender due to his prior felony convictions for drug-

related offenses. (Id. at 5, 16). As a career offender, Thomas's sentencing range under the United States Sentencing Guidelines ("Guidelines") was listed as 262 to 327 months. (Id. at 21).

After the PSR was generated, Thomas, through his court appointed counsel, Latisha Colvin ("Colvin"), filed a PSR Position statement, wherein he objected to the drug quantities listed in the PSR. However, the statement acknowledged that, since "[Thomas] was convicted only of the § 924(c) charge[,] . . . the drug quantity calculation would have no bearing on the five-year statutory mandatory minimum sentence." (Doc. 21 at 1). Thomas nevertheless objected to the drug quantities listed in the PSR because he contended that an accurate listing of the drug quantities would support his request for a downward departure in his sentence and would assist with him being accurately classified once he was committed to the Bureau of Prisons ("BOP"). (Id.). Specifically, Thomas contended that, while the PSR listed him with 66 grams of methamphetamine, 33 grams of marijuana, 25 grams of heroin, and 25 grams of ecstasy, the actual quantities were approximately 17 grams of methamphetamine, six grams of marijuana, one gram of heroin, and one-half gram of a ecstasy pill that had been crushed up. (Id. at 2).

At Thomas' sentencing, Colvin reiterated this argument:

THE COURT: All right. And I saw your PSR position, and it appeared you had no objection to the actual guideline

calculations in the final report. But there was some objection to the drug amounts listed; is that correct?

MS. COLVIN: Right, Your Honor. In reviewing the report with Mr. Thomas, it was just important for him to bring that out because, as the Court knows, the report will travel to the BOP and part of what they look at in classification is the offense conduct. And based on the amounts that he described to me, they were significantly less than that which was in the discovery.

. . .

THE COURT: Well, it doesn't affect the guidelines. . . . Also, given his guideline range, I'm not sure it would make any difference in the classification in this case as well.

MS. COLVIN: Well, Your Honor, and as it related to the factual resume, it did, and the indictment did reference approximately 30 grams of the ice. But there were several other drugs of different types that were not referenced in the indictment nor were they referenced in the factual resume. And I attached the photograph that was provided in the discovery of all the drugs that were confiscated. And it just – you know, I –

THE COURT: The photograph is not part of the presentence report.

MS. COLVIN: No. I know that it's not. It was more to – and that's why I wanted to get something in the record. Because it's not part of the presentence report, but it would be – it shows you what was found. And that is not the amount that is in the presentence report. So he's going to be classified based on evidence that is not – that was not obtained.

THE COURT: Well, as I said, the only thing – I can't make a factual determination based on what has been presented. All I can go on is what is in the presentence report. And the government doesn't have any different position. And I'm not sure what photograph you're talking about, because I don't have that as part of your PSR position.

MS. COLVIN: I'm sorry.

. . .

MS. COLVIN: It's just – you know, and I guess in this
situation, I just – if the – and I understand what the
court's position is. But if the Court does not have a
factual basis to support information in the presentence
report, I just – well, so my objection would be that it
would go to the Bureau of Prisons anyway.

THE COURT: Well, I think it will be evidently clear from
what is in the record, based upon your objection, that
he does not agree that these are the accurate amounts.
I'm not sure what he agrees are the accurate amounts.
But it appears that marijuana – or marijuana, meth,
heroin, and ecstasy were all seized at the time of his
arrest.

MS. COLVIN: Oh, that's correct, Your Honor, and as noted
in the presentence. Or – excuse me – in the presentence
position I did note the amounts that are his position
also.

THE COURT: Right. Right. Well, I think the record will
adequately reflect that. I don't think I need to make a
factual finding, because it doesn't affect the
guidelines. I find that the total offense level – well,
the total offense level is a minimum mandatory five years
up to 40 years, or up to life actually. The guideline
range is 262 to 327 months with a criminal history
category of VI because of the career offender finding.
Are there further objections to those findings?

MS. COLVIN: No, none other than previously stated, Your
Honor.

(Doc. 39 at 2-6). On October 17, 2016, Thomas was sentenced to

215 months incarceration, with a fourteen-month reduction for time

served, for a total of 201 months' incarceration. (Docs. 28; 39

at 15-16).[5]

---

[5] The Court issued an Amended Judgment on January 5, 2017, to
correct a clerical error. (Doc. 31). The Amended Judgment did

In Thomas's instant § 2255 motion (Doc. 32), he claims that Colvin, his court appointed counsel, rendered ineffective assistance due to her alleged failure to challenge the amounts of drugs listed in the PSR and alleged failure to file an appeal after Thomas requested that she do so. (Id. at 5-9). In its response in opposition, the Government argues that the claims are without merit, as Thomas has failed to meet the standard for establishing ineffective assistance of counsel. (Doc. 40). Thomas, in his reply to the Government's response, argues for the first time, that Colvin was also ineffective because she did not challenge Thomas' designation as a career offender. (Doc. 45 at 3). This petition is now ripe for review.

## II.  **STANDARDS OF REVIEW**

As a preliminary, matter, the Court notes that the limited scope of habeas relief is well established, as this Court has recognized:

> Collateral relief is an extraordinary remedy which "may not do service for a [] [direct] appeal." United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); see also Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) ("Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal."). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Frady, 456 U.S. at 164.

---

not alter Thomas' sentence or the date of imposition of the sentence and, therefore, has no bearing on the issue at bar.

United States v. Evans, 2008 WL 3200694, *3, 2008 U.S. Dist. LEXIS 59836, *8-9 (S.D. Ala. Aug. 4, 2008).

The Sixth Amendment guarantees criminal defendants a right to reasonably effective legal assistance. Roe v. Flores-Ortega, 528 U.S. 470, 476 (2000). In Strickland v. Washington, the Supreme Court adopted a two-prong standard for evaluating claims of ineffective assistance of counsel. Strickland, 466 U.S. 668, 687 (1984). To satisfy the requirements of this two-prong standard, a petitioner must establish (1) "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" meaning that counsel's representation fell below an objective standard of reasonableness, id. at 687-88; and (2) that counsel's deficient performance prejudiced the petitioner by demonstrating a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Because the failure to demonstrate either deficient performance or prejudice is dispositive of the claim, courts applying the Strickland test "are free to dispose of ineffectiveness claims on either of [Strickland's] two grounds." Oats v. Singletary, 141 F.3d 1018, 1023 (11th Cir. 1998).

In order to satisfy the "performance" prong of the Strickland test, a petitioner is required to show that his attorney's representation "fell below an objective standard of

reasonableness[,]" which is measured by "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688. That is, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. In considering such a claim, the court "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Smith v. Singletary, 170 F.3d 1051, 1053 (11th Cir. 1999) (citations omitted). Thus, a petitioner has a difficult burden because, to be considered unreasonable, "the performance must be such that 'no competent counsel would have taken the action that [the petitioner's] counsel did take." Ball v. United States, 271 Fed. Appx. 880, 883 (11th Cir. 2008).

In order to satisfy the "prejudice" prong of the Strickland test, a petitioner must show that a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The petitioner "must affirmatively prove prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.'" Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations omitted). Further, it is not enough to merely show that the alleged errors

affected the case in some imaginable way. Id. at 1293-94 ("[T]hat the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice.") (quoting Strickland, 46 U.S. at 693) (internal quotation marks omitted). Thus, "under the exacting rules and presumptions set forth in Strickland, 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" Windom v. Secretary, Dep't of Corrs., 578 F.3d 1227, 1248 (11th Cir. 2009) (citations omitted).

That being said, it is also well-settled that "a lawyer who disregards instructions from his client to appeal has acted 'in a manner that is professionally unreasonable.'" Gomez-Diaz v. United States, 433 F.3d 788, 790 (11th Cir. 2005) (quoting Flores-Ortega, 528 U.S. at 477). Moreover, if an attorney fails to file an appeal that his client wants filed, prejudice is presumed. Id. at 792. To satisfy the prejudice prong of the Strickland test, a defendant who shows that his attorney has ignored his wishes and failed to appeal his case need only demonstrate that, but for the attorney's deficient conduct, he would have appealed. Id. He need not show that his appeal "would likely have had merit." Flores-Ortega, 528 U.S. at 477 (internal quotes omitted). Moreover, "the presumption of prejudice recognized in Flores-Ortega applies regardless of whether a defendant has signed an appeal waiver," Garza v. Idaho, __ U.S. __, 139 S. Ct. 738, 749,

203 L. Ed. 2d 77 (2019), or a "Notice of No Appeal," <u>Lacey v.</u>
<u>United States</u>, 2019 U.S. Dist. LEXIS 142484, *18, 2019 WL 3949059,
*6 (S.D. Ala. July 30, 2019), *report and recommendation adopted*,
2019 WL 3947917 (S.D. Ala. Aug. 21, 2019).

Even where a client has not made a specific appeal request,
the Supreme Court has held that:

> [C]ounsel has a constitutionally imposed duty to consult
> with the defendant about an appeal when there is reason
> to think either (1) that a rational defendant would want
> an appeal (for example, because there are nonfrivolous
> grounds for appeal) or (2) that this particular
> defendant reasonably demonstrated to counsel that he was
> interested in appealing. In making this determination,
> courts must take into account all the information
> counsel knew or should have known.

<u>Flores-Ortega</u>, 528 U.S. at 480. Thus, "[i]f the evidence
establishes either that Petitioner's attorney acted contrary to
his client's wishes, or that he failed to fulfill his duty to
attempt to determine his client's wishes, prejudice is to be
presumed, and Petitioner is entitled to an out-of-time appeal,
regardless of whether he can identify any arguably meritorious
grounds for appeal . . . ." <u>Gomez-Diaz</u>, 433 F.3d at 793.

### III. <u>DISCUSSION</u>

In the instant petition, the essence of Thomas' claims is
that he was denied his Sixth Amendment right to effective counsel
during his sentencing. (Docs. 32, 45). Thomas claims that
attorney Colvin was ineffective for three reasons: (1) she failed
to file a notice of appeal after being directed to do so (<u>id.</u> at

8-9); (2) she failed to challenge the quantities of drugs noted in the PSR (id. at 5-7); and (3) she failed to challenge Thomas' designation as a career offender (Doc. 45 at 2-4).

**A. Failure to File a Notice of Appeal.**

In his petition, Thomas claims that Colvin was ineffective for failing to file a Notice of Appeal after he explicitly requested that she do so. (Doc. 32 at 8). As previously discussed, "a lawyer who disregards instructions from his client to appeal has acted in a manner that is professionally unreasonable," and prejudice is presumed. Gomez-Diaz, 433 F.3d at 790, 792. The same principles apply even if the petitioner has signed a limited appeal waiver. Id. at 793-94 (the rule that an attorney who disregards instructions from his client to appeal acts in a manner that is *per se* professionally unreasonable applies with equal force where a defendant has waived some, but not all, of his appeal rights). Thus, if the Court determines in this case that Colvin failed to honor Thomas' request to file a Notice of Appeal, it must grant Thomas' § 2255 motion on that ground.

**i. Evidentiary Hearing Testimony.**

On August 22, 2019, the Court conducted an evidentiary hearing on the limited issue of whether Thomas instructed attorney Colvin to file an appeal. During the hearing, Thomas testified that he discussed the prospect of appeal with attorney Colvin on one occasion. According to Thomas, Colvin came to see him in the

Baldwin County jail approximately two days after he was sentenced. At that time, they discussed an appeal. Thomas testified that Colvin told him that an appeal was a waste of time and advised him that, instead of an appeal, he should file a 2255 petition alleging ineffective counsel once he got to prison. Thomas maintained that notwithstanding Colvin's advice, he told her that he still wanted to appeal. Thomas acknowledged that in the same meeting, Colvin gave him a Notice of No Appeal and that he signed the document. At the evidentiary hearing, Thomas claimed that he did not read the document and that Colvin did not explain the document to him. Therefore, he did not know what he was signing and did not understand that the document said that he did not want to appeal. Thomas testified that, throughout the meeting with Colvin, he maintained his desire to appeal his sentence.

Thomas further testified that at his sentencing hearing, the district judge told him that he had only fourteen days to file an appeal. According to Thomas, following the meeting with Colvin two days after his sentencing, he next saw Colvin approximately two months later at the Baldwin County jail. Thomas testified that Colvin was surprised to see that he was still at the facility and that she told him that she would email the state District Attorney or do something to help get him out of state custody and into federal custody. Thomas testified that, during this discussion with Colvin, he never brought up the subject of his

appeal. He further acknowledged that, aside from the meeting conducted two days following his sentence, he had no further discussions with Colvin regarding his appeal.

Attorney Colvin also testified at the 2255 evidentiary hearing. Colvin testified that she has been an assistant federal defender for fourteen years, that she has handled a significant volume of criminal cases, and that she regularly handles guilty pleas and sentencings and advises criminal defendants regarding their right to appeal. Colvin recounted that she had reviewed her case file and that she visited Thomas in the Baldwin Count jail on March 25, 2016, and gave him a copy of the probation office's preliminary guidelines worksheet. At that time, she reviewed with Thomas the indictment, discovery, and the worksheet and discussed his status as a career offender, the implications of the armed career criminal provision, the implications of his prior convictions, enhancements, and the pretrial conference. According to Colvin, Thomas indicated that he intended to plead guilty.

Colvin testified that it was her custom to go back over the guidelines with her client when she discussed the plea agreement and to explain that the guidelines were advisory and not binding on the Court and that if the client signed the plea agreement, he would waive his right to appeal as it related to the calculation of the guidelines. Colvin testified that, in Thomas' case, he pled guilty to possession of a firearm in furtherance of a drug

trafficking offense, and the Government agreed to dismiss the remaining counts for possession with intent to distribute methamphetamine and felon in possession of a firearm.

With respect to sentencing, Colvin testified that she had no doubt as to Thomas' competency and that he was very helpful in putting her in touch with his family members in Chicago and Pensacola so that she could put together a social history to present to Judge Granade. According to Colvin, Thomas was facing a significant prison sentence because of his status as a career offender and possible status as an armed career criminal and because he was subject to consecutive mandatory minimum sentences on some of the charges. Ultimately, she negotiated with the Government to drop some of the charges in exchange for a guilty plea. This also gave Thomas a chance to cooperate and possibly have the Government file a motion to reduce his sentence. She testified that she explained all of this to Thomas. On September 28, 2016, Colvin sent Thomas a copy of the probation office's presentence investigation report and went to the jail and discussed it with him. She explained that the guidelines range was 262 to 327 months and made sure that he understood it. She sent him a letter that explained it as well. Colvin stated that she filed a sentencing memorandum and argued in favor of a reduced sentence for Thomas and that Judge Granade ultimately granted a downward variance.

With respect to the issue of appeal, Colvin testified that, in her practice, it is the client who decides whether to appeal. Colvin testified that she would never in the course of her practice refuse to follow a client's instruction to file a notice of appeal. She explained that it would take approximately one to two minutes to complete the form on her computer and file the notice of appeal electronically, that she understands how important an appeal is, and that she would never refuse to file a notice of appeal for a client if the client wished it to be filed.

In this particular case, Colvin testified that she remembered the conversation with Thomas after his sentencing when they discussed his appeal. She stated that she advised Thomas of the advantages and disadvantages of an appeal and that his decision not to take an appeal was knowing and voluntary. Colvin testified that she gave Thomas the Notice of No Appeal and that she read it to him as well. Thomas then signed the document, and at no time after signing the document did he contact her and say that he wanted to appeal.

Colvin testified that, following the meeting in which Thomas signed the Notice of No Appeal, she saw Thomas months later while visiting other clients at the Baldwin County jail. She testified that she was surprised to see that Thomas was still at the county jail although she knew that he was previously being held on related state charges. She testified that she contacted the district

attorney's office in Baldwin County to advise them of the status of Thomas' federal case so that they could make a decision about his state charges.  Colvin explained that if the time that Thomas had been serving had not gone toward any other sentence, he would be entitled to credit for that time, and she was trying to put him in a better position as it related to his federal case.  Colvin testified that at no time during that encounter did Thomas tell her that he had intended to file a direct appeal of his conviction and sentence.

### ii.   Findings of Fact Related to Failure to File Appeal.

After reviewing the parties' submissions and testimony, the court credits Colvin's testimony that Thomas did not request or instruct her to file an appeal. The Court rejects and expressly finds disingenuous Thomas' testimony to the contrary. First, Thomas acknowledged that he was informed and understood that he had fourteen days after sentencing to file an appeal.  Even so, he claims that he told Colvin on only one occasion that he wanted to appeal, that being, during the meeting two days after his sentencing, at which time he contemporaneously signed a Notice of No Appeal.  Thomas is literate, as he demonstrated by reading extensively from documents at the 2255 evidentiary hearing.  Thus, the Court finds disingenuous his claims that he did not read the one page Notice of No Appeal, that he did not see the heading at the top of the page which plainly displayed the words "Notice of

No Appeal" in large, bold font, and that he did not know what he was signing or that the document stated that he did not want to appeal. (Doc. 30).

Second, Thomas testified that, when Colvin saw him unexpectedly at the county jail two months after his sentencing, she inquired as to why he was still in state custody and then set about helping him get transferred into federal custody by contacting the Baldwin County district attorney's office. This voluntary action by Colvin to help Thomas when she was at the county jail on unrelated business belies Thomas' claim that she refused or declined to file a notice of appeal for him when he expressly directed her to do so two days after his sentencing. Indeed, Colvin testified that filing a notice of appeal is essentially a ministerial task that would have taken a mere two or three minutes of her time, considerably less time than she spent voluntarily assisting him with his state custody issue even though his federal case had concluded.

Third, it is undisputed that, when Thomas had the chance encounter with Colvin at the Baldwin County jail, he did not even mention his appeal, which he either believed was pending or which he had discovered had not been filed, either of which should have prompted him to mention the subject to Colvin. Indeed, Thomas does not contend and the record does not reflect that Thomas ever had any discussion with Colvin regarding an appeal after signing

the Notice of No Appeal. These facts belie Thomas' claim that he instructed Colvin to file an appeal.

Based on the foregoing, the Court finds that Thomas did not instruct Colvin to file an appeal of his federal conviction or sentence. Therefore, Thomas' ineffective assistance of counsel claim based on this alleged failure is due to be denied.

**B. Failure to Challenge Drug Quantity Determination.**

Thomas' next argument centers on his contention that Colvin rendered ineffective assistance for her alleged failure to challenge the drug quantities listed in the PSR prior to sentencing. (Doc. 32 at 5-7). Thomas argues that, had Colvin done so, he would have been "cleared" of "trafficking in drugs" and he would have received a lesser sentence. (Id. at 6-7).

To the contrary, the record clearly shows that Colvin strenuously and repeatedly objected to the drug quantities contained in the PSR via writing (prior to sentencing) and orally (at sentencing). In Thomas' PSR position statement, Colvin disputed the Government's drug calculations and set forth Thomas' position as to the correct quantities of the drugs found in his possession. (Doc. 21 at 1-2). In addition, at Thomas' sentencing, Colvin argued that the drug amounts in the PSR were incorrect. (Doc. 39 at 2-6). Thus, Thomas' argument that Colvin should have challenged the drug quantities prior to sentencing is at odds with the record evidence, which conclusively demonstrates that she did

so. See Starks v. United States, 2007 WL 1752526, *4-5, 2007 U.S. Dist. LEXIS 43774 (M.D. Ala. Jun. 15, 2007) (holding that petitioner's § 2255 claim was meritless where he claimed ineffective assistance of counsel for failure to challenge drug quantity, but the record established that his counsel did argue strenuously against the quantity determined by the court)[6].

Finally, Thomas argues that, had the amounts of the drugs listed in the PSR more closely aligned with his assertions, he would have received a lesser sentence. (Doc. 32 at 7). Thomas' argument is misplaced. The record shows that Thomas pled guilty to, and was sentenced for, possessing a firearm in furtherance of a drug trafficking crime. (Doc. 18). As a result, the drug amounts attributed to Thomas had no bearing on the sentence imposed by the Court, a fact acknowledged both by Colvin and Judge Granade. (Doc. 21 at 1; Doc. 39 at 3). Thus, Colvin's conduct with respect to this issue fails to satisfy either prong of Strickland. In any event, the record reflects that Colvin *twice* raised Thomas' objections to the drug quantities listed in the PSR, which the Court finds was objectively reasonable and demonstrates that Colvin was functioning as the counsel guaranteed by the Sixth

---

[6] Thomas' argument that he had "a constitutional right to have a jury make the drug weight findings beyond a reasonable doubt" is misplaced. (Doc. 32 at 7). The record plainly shows that, when Thomas signed his plea agreement, he explicitly waived his right to a jury trial. (Doc. 18 at 1).

Amendment. Moreover, even if Colvin had failed to raise these objections, it is undisputed that the drug quantities had no effect on his sentence; thus, Thomas has failed to establish the prejudice prong of Strickland, *i.e.,* that the outcome would have been different. See United States v. Dysart, 2005 U.S. Dist. LEXIS 35498, *10, 2005 WL 1684426, *4 (N.D. Fla. Jun. 16, 2005)("While it is true that a defendant can be prejudiced due to counsel's failure to challenge the drug quantity, under the facts of defendant's case, she has not shown that counsel was constitutionally ineffective" or that she was prejudiced by counsel's conduct.).

Accordingly, Thomas' ineffective assistance of counsel claim based on this alleged failure is due to be denied.

### C. Failure to Challenge Career Offender Designation.

Thomas' final claim centers on his contention that Colvin was ineffective for failing to challenge his prior offenses that were used to designate him a career offender. (Doc. 45 at 3). Thomas claims that, had Colvin challenged those offenses, "he would have received a lesser sentence . . . because the [career offender] enhancement doesn't apply in this case [because] [t]he prior offenses do not qualify as "serious drug offenses" or "violent felonies." (Id.).

The Guidelines § 4B1.1(a) states:

> (a) A defendant is a career offender if (1) the defendant
> was at least eighteen years old at the time the defendant
> committed the instant offense of conviction; (2) the
> instant offense of conviction is a felony that is either
> a crime of violence or a controlled substance offense;
> and (3) the defendant has at least two prior felony
> convictions of either a crime of violence or a controlled
> substance offense.

U.S.S.G. § 4B1.1(a). Thomas does not dispute that the first two factors are satisfied. Thus, the Court's inquiry focuses on the third prong of the analysis – whether the prior convictions relied upon by the Court constituted felony convictions that were "either a crime of violence or a controlled substance offense" under § 4B1.1(a)(3).

Under the Guidelines, a controlled substance offense is "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with the intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). The record reveals that Thomas has a host of prior drug-related convictions. (See Doc. 22 at 9-15). Two of those offenses were used in determining that he is a career offender.

First, in 2003, Thomas was charged with trafficking marijuana in the Douglas County Superior Court, in Georgia, and sentenced to

ten years incarceration.[7]  (Doc. 22 at 9-10).  Next, in 2013, in
Escambia County Circuit Court, Florida, Thomas was charged with,
and adjudicated guilty of, possession with the intent to sell
marijuana (count one); possession of a controlled substance
without a prescription (count two); possession of cocaine (count
three); possession of over twenty (20) grams of marijuana (count
four); and possessing/using drug equipment (count five).  (Id. at
15).  He was sentenced to incarceration for one year and one day
for counts one through four and eleven months and fifteen days
incarceration for count five, to be served concurrently.  (Id.).

     Since the aforementioned drug convictions were offenses under
state law, punishable by more than one year imprisonment, and were
offenses prohibiting the possession, distribution, or dispensation
of controlled substances, they qualify as controlled substance
offenses.   Therefore, Thomas was properly designated a career
offender, and Colvin's decision not to challenge that designation
did not fall below an objective standard of reasonableness and did
not violate the "performance" prong of Strickland.  Indeed, it is
reasonable to conclude that other competent counsel in Colvin's

---

[7] Initially, the court withheld an adjudication of guilt for this
offense under Georgia's First Offender Act.  (Doc. 22 at 9-10).
However, after a parole violation in 2014, Thomas was adjudicated
guilty of drug trafficking and sentenced to ten years
incarceration, split to serve seven months confinement, and given
credit for time served, with the balance of his sentence to be
fulfilled on probation.  (Id. at 10).

position likewise would have opted not to object to the career offender designation, as such a challenge would have been futile. Further, the election not to challenge the designation fails to meet Strickland's "prejudice" requirement, as it is unlikely that a challenge to the career offender determination would have resulted in a different outcome for Thomas. See United States v. Mata, 2011 WL 5080633, *4, 2011 U.S. Dist. LEXIS 123473, *8 (N.D. Fla. Sept. 23, 2011)(denying a § 2255 motion where petitioner failed to establish ineffective assistance of counsel based on counsel's "failure to challenge the consideration of the prior controlled substance offense as a felony drug offense for enhancement purposes . . ."). Accordingly, for each of the foregoing reasons, Thomas cannot prevail on an ineffective assistance of counsel claim with regard to this issue.

### IV. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be **DENIED**. 28 U.S.C. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A

certificate of appealability may be issued only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Where a habeas petition is being denied, in part, on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA should be issued [only] when the prisoner shows...that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 1064, 146 L. Ed. 2d 542 (2000). Where a habeas petition is being denied on the merits of an underlying constitutional claim, a certificate of appealability should be issued only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under Barefoot v. Estelle, 463 U.S. 880, 893, 103 S. Ct. 3383, 3394, 77 L. Ed. 2d 1090 (1983), includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed

further.")(internal quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003).

Thomas' petition does not warrant the issuance of a Certificate of Appealability. Reasonable jurists could not debate whether Thomas' claims should be resolved in a different manner or that the issues deserve to proceed further. The recommendation that Thomas' claim be denied is based on the straightforward application of clear Circuit precedent, and no reasonable jurist could differ on the appropriate disposition of his claim on the record presented. As a result, Thomas is not entitled to a certificate of appealability and, consequently, he should not be permitted to proceed *in forma pauperis* on appeal.

## V.   CONCLUSION

For the foregoing reasons, it is recommended that Petitioner's § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Doc. 32) be **DENIED**, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Antwan Jernell Thomas. The undersigned further opines that Thomas is not entitled to the issuance of a Certificate of Appealability.

### Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects

to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); **Fed.R.Civ.P.** 72(b); S.D. ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

      **DONE** this **31st** day of **January, 2020.**

                        **/s/ SONJA F. BIVINS**
                    **UNITED STATES MAGISTRATE JUDGE**